UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

CURTIS HOUSTON,

*Defendant.*

Case No. 10-cr-265-1 (RCL)

## MEMORANDUM OPINION

Defendant Curtis Houston moves the Court to convert the remaining eight months of his fourteen-year term of imprisonment to home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. ECF No. 322. Alternatively, he seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* The government opposes both requests, ECF No. 329. Upon consideration of the parties' filings, the applicable legal standards, and the entire record herein, the Court will **DENY** defendant's motion, ECF No. 322.

### I. BACKGROUND

From approximately October 2008 until August 2010, defendant Curtis Houston played a prominent role in a criminal organization that supplied significant quantities of powder and crack cocaine to buyers in the Washington, D.C. area. PSR, ECF No. 169, ¶¶ 19–20, 30. No mere "street-level" dealer, defendant was "personally supplied" with large amounts of powder and crack cocaine, which he redistributed to others. *Id.* at ¶¶ 20, 30.

In September 2011, defendant pleaded guilty to conspiring to distribute and possessing with intent to distribute 5 kilograms or more of powder cocaine and 280 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), and 846. ECF

1

No. 169 at 1. Based on defendant's total offense level and criminal history category, the U.S. Sentencing Guidelines provided a range of 168 to 210 months' imprisonment. PSR ¶ 125. Defendant's offense, however, carried a statutory minimum sentence of twenty years. *Id.* at ¶ 124. Accordingly, the U.S. Probation Office reported that the Guidelines term of imprisonment was twenty years. *Id.* at ¶¶ 124–25; *see* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

As a term of the plea agreement, the government agreed that a sentence of fourteen years' imprisonment was appropriate. PSR ¶ 126. On February 28, 2012, the Court sentenced defendant to fourteen years' imprisonment, followed by five years of supervised release. ECF No. 189 at 2–3. The Court later denied defendant's motion to vacate pursuant to 28 U.S.C. § 2255. ECF Nos. 199, 200, 258. It also denied defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment 782 of the U.S. Sentencing Guidelines. ECF Nos. 264, 279, 285. Accounting for his good-time credit, defendant is scheduled to be released on November 10, 2021. ECF No. 329 at 30.

Defendant now asks the Court to convert the remining nine months of his sentence of incarceration to home confinement pursuant to the CARES Act. ECF No. 322. Alternatively, he moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* He argues that his severe health conditions—including having hypertension, an Inferior Vena Cava ("IVC") filter, and only half of a lung on his right side—make him more susceptible to severe illness or death should he contract COVID-19. *Id.* at 5. Defendant also argues that home confinement or compassionate release is appropriate because he incurred no disciplinary infractions in the past five years, has completed several educational and vocational classes in prison, has "earn[ed] the right to be housed

in a lower security facility," and has served nearly his entire sentence. *Id.* at 3, 5.

The government opposes defendant's motion. ECF No. 239. It first argues that the Court lacks the authority to order that defendant serve the remainder of his sentence on home confinement. *Id.* at 13 n.10. Second, as for defendant's alternative request for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), the government argues that a sentence reduction would be improper because defendant has not shown that there are extraordinary and compelling reasons warranting relief or that he is no longer a danger to the community, and because the relevant factors set forth in 18 U.S.C. § 3553(a) do not support a sentence reduction. *Id.* at 17–25.

Defendant replied, ECF No. 331, and the motion is now ripe for consideration.

## II. LEGAL STANDARDS

### A. Home Confinement

Under 18 U.S.C. § 3624(c)(2), the Director of the Bureau of Prisons ("BOP") has the authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Notably, Congress gave only the BOP—not the courts—this authority. *See* § 3624(c)(1)–(2). And although the CARES Act allows the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" during the national emergency caused by the COVID-19 pandemic, the CARES Act does not give the courts the authority to determine whether a prisoner should be released on home confinement. Pub. L. No. 116-136, § 12003(b)(2); *see United States v. Shabazz*, 17-CR-43, 2020 WL 7639545, at *4 (D.D.C. Nov. 24, 2020). Accordingly, because the Court lacks the authority to order that defendant be released on home confinement, it will consider only defendant's alternative request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 22.

**B. Compassionate Release**

A defendant seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). To be eligible for a reduction, three requirements must be met. First, the defendant must have exhausted his administrative remedies. § 3581(c)(1)(A). This requires a showing that "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that 30 days have elapsed since "the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.*

Second, the defendant must show that "extraordinary and compelling reasons warrant" a reduction of his original sentence. *Id.* In its policy statement on sentence reductions under § 3582(c)(1)(A), the Sentencing Commission enumerated four circumstances that rise to the level of "extraordinary and compelling." *See* § 3582(c)(1)(A) (requiring that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission"); U.S.S.G. § 1B1.13 (Sentencing Commission's policy statement on sentence reductions under § 3582(c)(1)(A)). Those include circumstances involving the defendant's health, age, family, and "other reasons" as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). Relevant here, an inmate's health condition presents an "extraordinary and compelling" reason when:

> The defendant is—
>> (I) suffering from a serious physical or medical condition,
>> (II) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical and mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

§ 1B1.13 cmt. n.1(A)(i)-(ii).

Third, the defendant must show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13; *see* § 3582(c)(1)(A). Section 3142(g), in turn, requires courts to consider the following factors when "determining whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community": (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device," (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, including character, physical and mental condition, family ties, employment, past conduct, and criminal history, among others, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

If the Court finds that the defendant has met his burden of showing these three requirements, the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," after considering the relevant factors set forth in 18 U.S.C. § 3553(a). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a).

### III. DISCUSSION

The government concedes, and the Court agrees, that defendant has exhausted his administrative remedies. *See* ECF No. 329 at 15–16. On July 24, 2020, defendant petitioned the acting warden of his correctional facility for compassionate release. ECF No. 322 at 3. And on August 7, 2020, his request was denied. *Id.*; *see* 18 U.S.C. § 3582(c)(1)(A). Nevertheless, the Court finds that a sentence reduction to time served is not warranted, as defendant has not met his burden of showing "extraordinary and compelling reasons" justifying relief. 18 U.S.C. § 3582(c)(1)(A). And even if defendant had shown extraordinary and compelling reasons, the Court would nevertheless deny defendant's motion, because the relevant § 3553(a) factors do not support a sentence reduction. *See id.*

#### A. Defendant Has Not Shown "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction

Defendant argues that his underlying health conditions—including hypertension, an IVC filter, and having only one-and-a-half lungs—make him more susceptible to severe illness from COVID-19. ECF No. 322 at 2, 5. This increased risk, he argues, amounts to an "extraordinary and compelling" reason justifying relief, despite the fact that he is only 45 years old. *Id.* at 5. Yet defendant neither submits any medical records to substantiate these claims nor makes any argument as to *why* these conditions make him more susceptible to severe illness from COVID-19. *See generally* ECF Nos. 322, 331. Instead, defense counsel simply states that "Mr. Houston [sic] medical history is severe and fits the description of underlying medical health conditions making him more susceptible to [COVID-19]." ECF No. 322. In its opposition, however, the government submitted 163 pages of defendant's medical records. *See* ECF No. 329 at 39–202. Evaluating defendant's claims, then, requires a close examination of those records.

To begin, defendant's medical records do not support the claim that defendant suffers from hypertension (high blood pressure). One document in his medical records titled "Health Problems" lists that his "hypertension, unspecified essential" was resolved on May 30, 2014. ECF No. 319 at 194. And his blood pressure readings at more recent health visits confirm that defendant is currently not experiencing high blood pressure. Between June 23, 2020, and October 23, 2020, defendant's blood pressure readings were 124/78, 127/83, 135/84, 111/76, 107/76, 116/75, 122/76, and 124/78. ECF No. 329 at 104–05. Most recently, on February 11, 2021, defendant's blood pressure was 132/80. *Id.* at 182. The Centers for Disease Control and Prevention ("CDC") notes that "[t]he guidelines used to diagnose high blood pressure may differ from health care professional to heath care professional." Centers for Disease Control and Prevention, *High Blood Pressure Symptoms and Causes*, https://www.cdc.gov/bloodpressure/about.htm (visited Mar. 2, 2021). While "[s]ome health care professionals diagnose patients with high blood pressure if their blood pressure is consistently 140/90 mm Hg or higher," others "diagnose patients with high blood pressure if their blood pressure is consistently 130/80 mm Hg or higher." *Id.* Under either benchmark range provided by the CDC, defendant does not have hypertension.

Defendant also argues that having an IVC filter (a small device placed in a large vein in the abdomen that can stop blood clots from traveling from the lower half of the body into the lungs) makes him particularly susceptible of falling victim to COVID-19. ECF No. 322 at 3, 5. Indeed, under current CDC guidelines, adults of any age with "[h]eart conditions, such as heart failure, coronary artery disease, or cardiomyopathies" are at an "increased risk of severe illness from the virus that causes COVID-19." Centers for Disease Control and Prevention, *COVID-19, People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-me dical-conditions.html (visited Mar. 2, 2021).

Yet defendant's medical records do not indicate that he has any of these heart conditions. To be sure, the records *do* indicate potential health issues with his heart and IVC filter. Results of a chest X-Ray dated February 17, 2021 show that defendant has a "malpositioned IVC filter." ECF No. 329 at 194. And at a health services visit on February 21, 2021, defendant complained of burning pain on the right side of his chest. *Id.* at 187. His records also indicate that he sustained a "traumatic aorta rupture" from a car accident in 1998. *Id.* at 88. But without a medical diagnosis from a health care professional, the Court is not in a position to infer that a "malpositioned IVC filter," chest pain, or an aortic rupture suffered more than twenty years ago amount to a heart condition that would make him more susceptible to COVID-19.

Finally, defendant argues that having only one-and-a-half lungs also makes him more susceptible to serious illness should he contract COVID-19. ECF No. 322 at 3, 5. Results from defendant's chest X-Ray dated February 17, 2021 indicate that defendant's "right lung is clear except for minimal scarring." ECF No. 329 at 200. And under CDC guidelines, adults of any age with "[p]ulmonary fibrosis (having damaged or scarred lung tissues)" "might be at an increased risk" of severe illness from the virus that causes COVID-19." Centers for Disease Control and Prevention, *COVID-19, People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (visited Mar. 2, 2021).

Alone, however, this condition does not rise to the high bar of an "extraordinary and compelling" reason warranting relief. 18 U.S.C. § 3582(c)(1)(A). As explained above, defendant's medical records undermine his claim that he suffers from hypertension. Nor has he met his burden of showing a heart condition that could increase his risk of severe illness or death should he contract COVID-19. And at age 45, defendant is not considered to be at high risk of severe illness

8

from COVID-19 based on age alone. *See Centers for Disease Control and Prevention, COVID-19, Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (visited Mar. 2, 2021).

Finally, none of the conditions listed in the Presentence Investigation Report move the needle. *See* ECF No. 322. Those include "high blood pressure medication prescribed," "stitches in his head from an accident at age 6," a "severed heart valve," "diagnosed with hypertension," and "shot in right leg in 2002 when intruder broke into his home." *Id.* (citing PSR ¶¶ 84, 86, 88, 90, 91). As explained above, defendant's medical records do not show a current diagnosis of hypertension. And though defendant's medical records indicate that he suffered a "traumatic aorta rupture" from a car accident in 1998, ECF No. 329 at 119, defendant does not make any arguments or present any evidence showing why this injury from more than twenty years ago would make him more susceptible to serious illness should he contract COVID-19 today. Similarly, defendant does not put forth any evidence or make any argument as to why a gunshot wound to his leg in 2002 and an injury he sustained at age six are relevant to the present inquiry. Defendant thus has not shown that he suffers from "a serious physical or medical condition . . . that substantially diminishes" his ability to care for himself in prison during the COVID-19 pandemic. U.S.S.G. § 1B1.13 cmt. n.1(A)(i)-(ii). Accordingly, the Court finds that defendant has not met his burden of showing "extraordinary and compelling reasons" warranting a sentence reduction.[1]

---

[1] It is clear from defense counsel's reply (which was filed three days late without leave of Court) that counsel, Mr. Kevin McCants, did not read the medical records submitted by the government in its opposition. Despite having access to information about defendant's blood pressure, heart health, and lung health, counsel simply repeats in his reply brief the same argument made in his opening brief. He writes, "[defendant] has been diagnosed with hypertension, he takes high blood pressure medication, has a half-lung on the right side of his body (a IVC filter placed in his body during heart surgery)." ECF No. 331 (internal quotation marks omitted). The Court trusts that counsel is aware of his obligations under the D.C. Rules of Professional Conduct. In the event that he has forgotten, the Court reminds him that Comment 5 to Rule 1.1 provides, "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual . . . elements of a problem[.]" D.C. Rule of Professional Conduct 1.1, cmt. 5. Mr. McCants's failure to verify the accuracy of the statements submitted to this Court is not something the Court takes lightly.

## B. The Relevant § 3553(a) Factors Do Not Support a Sentence Reduction

Even if defendant had shown "extraordinary and compelling reasons" justifying a sentence reduction, the Court would still deny his motion. Before the Court can grant a defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), it must consider the relevant factors set forth in 18 U.S.C. § 3553(a). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)–(D). Though the final factor—the need to provide the defendant with needed medical care—may tilt in favor of defendant's release, the Court finds that all other factors weigh against a sentence reduction.

First, the nature and circumstances of the offense and the history and characteristics of the defendant weigh against a sentence reduction. For approximately two years, defendant played a "large[] role" in a criminal organization that supplied "significant quantities" of powder and crack cocaine to buyers in the Washington, D.C. area. PSR ¶¶ 20, 30. No mere "street-level" dealer, defendant was "personally supplied" with significant volumes of cocaine and crack, which he redistributed to others. *Id.* at ¶¶ 20, 30. Defendant's prominent role in a criminal organization that funneled large quantities of cocaine into the Washington, D.C. area cannot be treated lightly.

Further cutting against defendant's early release is his criminal history. The drug conviction in this case is not defendant's first brush with the law. When he pleaded guilty to the instant offense, defendant's prior convictions included, among others, unlawful possession of a

handgun in his vehicle, possession of cocaine with intent to distribute, negligent driving, and driving under the influence. PSR ¶¶ 48, 52, 54, 55. Taken together, the severity of the instant offense and defendant's criminal history do not support a reduction in sentence.

Next, the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct" also cuts against defendant's early release. Defendant's sentence of fourteen years' imprisonment was well below the U.S. Sentencing Guidelines range and the statutory minimum sentence of twenty years' imprisonment. *See* PSR ¶¶ 125, 129. Accordingly, the Court finds that even a eight-month reduction in his term of imprisonment would result in a sentence that no longer reflects the seriousness of defendant's offense, promotes respect for the law, provides just punishment, or deters future criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A).

For similar reasons, the Court also finds that releasing defendant before he has served his full term of imprisonment would not further the interest of "protect[ing] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Though defendant makes no arguments specific to the issue of recidivism, he does note that he has not had any disciplinary infractions in the past five years,[2] has "earned the right to be housed in a lower security facility," and has completed classes in welding, "VT employ-Ability," piano, bass guitar, and music audio. ECF No. 322 at 5. Yet given the severity of defendant's offense, combined with his age of 45, extensive criminal history, and lack of a release plan, the Court is not persuaded that defendant will not reoffend.

Finally, the Court recognizes that the need to provide defendant with adequate medical care

---

[2] Defendant's records show only one disciplinary infraction: in June 2015, defendant admitted to possessing and using a cell phone. ECF No. 329 at 37.

11

may weigh in favor of his release. Though defendant neither submitted any medical records, nor made any effort to explain his health conditions, the Court recognizes that defendant does not have a clean bill of health. This lone factor, however, cannot tip the scales in defendant's favor. In sum, because the Court finds that the § 3553(a) factors do not support a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), the Court would nevertheless deny defendant's motion had he shown "extraordinary and compelling reasons" justifying relief. § 3582(c)(1)(A).

## IV. CONCLUSION

For the reasons explained above, defendant's motion for home confinement under the CARES Act or, in the alternative, for compassionate release under 18 U.S.C. § 3582(c)(1)(A), ECF No. 322, will be **DENIED**.

A separate Order consistent with this Memorandum Opinion shall follow.

Date: March 8, 2021

Royce C. Lamberth
United States District Judge